# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MONAT GLOBAL CORP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| KAYLA BAKER, | ) | |
| | ) | |
| Defendant. | ) | |

ABBOTT NICHOLSON, P.C.
By:   William D. Gilbride, Jr. (P36830)
And:  Christopher R. Gura (P58437)
Attorneys for Plaintiff
300 River Place, Suite 3000
Detroit, Michigan 48207-4225
(313) 566-2500
wdgilbride@abbottnicholson.com
crgura@abbottnicholson.com

## **COMPLAINT**

NOW COMES Plaintiff, Monat Global Corp, by its undersigned counsel, and for its complaint against Defendant Kayla Baker, states as follows:

### **Parties to this Action**

1.    Monat Global Corp ("Monat") is a Florida corporation, with its principal place of business in Doral, Florida.

2. Kayla Baker ("Baker") is, upon information and belief, a citizen of the state of Michigan, and is domiciled in Highland Township, Oakland County, Michigan.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over Monat's claims under 28 U.S.C. § 1332 because Monat and Baker are citizens of different states, and the amount in controversy exceeds $75,000.

4. Venue is proper in the Eastern District of Michigan because Baker resides here, and on information and belief, made the disparaging and defamatory statements, and carried out the unfair and deceptive acts at issue, in this district.

## Background

5. Monat is a world-class designer, manufacturer, and distributor of hair care and personal products throughout the United States and Canada.

6. Monat sells its products using a direct sales model, under which it engages a number of independent sales representatives, referred to as "Market Partners," to market and distribute its products.

7. Monat provides commissions and other financial incentives to its Market Partners for sales they make, and for purchases and sales made by new and additional Market Partners that they recruit.

8. Monat's Market Partners utilize Facebook and other social media as the primary avenue of marketing Monat's products.

9. Baker is a hair stylist who, on information and belief, works at a salon.

10. On information and belief, the salon at which Baker works sells salon-brand hair care products in competition with Monat, including Paul Mitchell, Redken, OPI, Matrix, and others.

11. On information and belief, Baker receives a commission, or other job related incentives, to sell the salon-brand hair care products offered by the salon at which she works.

12. Baker's own Facebook posts demonstrate that the sale of Monat's products are cutting into her own sales, and that Baker is struggling to compete with Monat's Market Partners.

13. For instance, Baker has vehemently criticized Monat Market Partners for giving advice regarding the selection of hair care products.

14. Baker has stated that only stylists, like herself, should be permitted to advise consumers regarding the selection of haircare products.

15. Sometime in mid-January, Baker joined an online Facebook hate group called "Monat – My Modern Nightmare" (the "Group"), where Baker

learned that other stylists were frustrated from competition from Monat Market Partners, and that their clients were switching to Monat as well.

16. The Group was largely administered by other financially-driven hair stylists.

17. The Group provided a forum for individuals to attack and spread falsehoods about Monat's products, employees, and Market Partners.

18. As a member of that Group, and on her individual Facebook page, Baker began a smear campaign to relentlessly and falsely disparage Monat and its products.

19. On January 31, 2018 at 9:48 a.m., Baker posted the following message on Facebook:

> I'm no longer against [Monat] just because they are non-professional. Women have become infertile, lost babies, started menopause early and at the least destructive-had their cycles changed and increased. Hair falling out in handfuls, bad medical problems and what is monat doing? Why, buying people cruises and Porsches of course! So share this. Us stylists have them scared cause we know their dirty secret now.

See Baker Facebook Post, dated January 31, 2018, 9:48 a.m., attached as **Exhibit A**.

20. Later that day, Baker continued spreading falsehoods about Monat, its products, and its executives:

> I am making alllll of my Monat posts public #comegetme they lied about supposedly winning a court case against a stylist.

> They are harassing stylists and defaming their names, businesses, insulting their spouses and family members. A few stylists in Michigan have already sworn off this crap. You think I was posting about you before MONAT Hair Care? Lol let's go. #monatisalie #professionalsagainstmonat Admins of Monat-My Modern Nightmare are dropping like flies because reps are harassing and threatening with lawsuits. So TRY ME. 1. Red clover is damaging to skin, and can cause hormonal imbalance. 2. You literally have relaxer ingredients in SHAMPOO. 3. Your CEO was part of a huge Ponzi scheme. 4. If somebody is paying me to bash you they owe me a lottttttt of money. MONAT where you at?!

See Baker Facebook Post, dated January 31, 2018, 4:07 p.m., attached as **Exhibit B**.

21. On January 31, 2018, at approximately 6:29 p.m., Baker made the following Facebook comment about Monat and its products:

> I'm a hairstylist. I am a licensed cosmetologist and I will stand against this product line with everything I have because I gave an oath to be of good moral character and protect the integrity of people's hair. I have held sobbing clients in my arms who's self esteem was crushed when their hair fell out. I have seen/heard and read this company VICTIM BLAME consumers. My friend miscarried her baby and they blamed her even though she had open scalp sores and direct exposure to red clover..I had a sample and gave it to something deserving, my toilet.

See Baker Facebook post, dated January 31, 2018, 6:29 p.m., attached as **Exhibit C**.

22. Based on her false, malicious, and outrageous Facebook posts, Baker quickly gained notoriety and popularity within the Group and on Facebook generally.

23. In fact, on February 2, 2018, Baker noted her self-described "newfound fame," and stated that she "went from having 1-3 friend requests a month to 30+ A DAY."

24. Baker's false statements and malicious lies caused damage to Monat's business and reputation.

25. On February 6, 2018, Monat sent Baker a demand letter, informing her that her posts were scientifically and factually false, and therefore defamatory ("Demand Letter"). See Monat Demand Letter, dated February 6, 2018, attached as **Exhibit D**, at 1–2.

26. Monat demanded that Baker remove all defamatory posts about Monat from her personal Facebook page and the Group, and that Baker immediately stop making defamatory posts about Monat and its products. *Id*.

27. Monat additionally demanded that Baker respond in writing to Monat's Demand Letter by 5:00 p.m. (Eastern Time) on Thursday, February 8, 2018, stating that she would comply with Monat's demands. *Id*. at 2.

28. Monat warned Baker that if she failed to comply, Monat would take necessary legal action to protect its business and good name. *Id*. at 2.

29. Monat's Demand Letter was delivered to Baker on February 7, 2018 at approximately 4:11 p.m. *Id*. at 4.

30. That same day, at approximately 5:51 p.m., Baker called Monat's legal counsel, and left a voicemail stating that she received Monat's Demand Letter.

31. In her voicemail, Baker told Monat's legal counsel, among other things, "last time I checked it is not against the law to give a review on a product. It is also freedom of speech for me to say whatever I want on my personal Facebook page, but if you would like to pursue this as a lawsuit I'm going to go ahead and give your letter to a lawyer. . . ."

32. Baker has not responded in writing as requested by Monat in its Demand Letter.

33. Baker did not remove her defamatory posts, and instead, continued to make additional false and defamatory posts about Monat.

34. On Monday February 12, 2018, shortly after midnight, Baker created a Facebook post titled "Why I hate Monat Products: An essay by Kayla Baker" ("February 12 Post"). See Baker Facebook Post, dated February 12, 2018, attached as **Exhibit E**.

35. In her February 12 Post, Baker disparaged Monat, stating, "it is a product corporation ran by non-professionals, that are not educated on how to keep the integrity of the hair, how to truly understand uses of products and benefits of products, or apparently even what breakage is." *Id.*

36. Ms. Baker continued, "Monat has been receiving complaints and concerns since 2014 but has trained and brainwashed MP's [(*i.e.*, Market Partners)] to alleviate the concerns or lie directly to avoid cancellations." *Id.*

37. Baker represented that Monat products contain red clover, which "is being absorbed through open sores on people's scalps," that "[r]ed clover is in the hairspray so people are ingesting it," and that "[h]ormonal issues, pregnancy problems and miscarriage have been linked to red clover."

38. On February 16, 2018, at 10:53 a.m., Baker created a Facebook post displaying supposed "before and after" pictures of a young child under the age of 5. Regarding the picture, Baker makes the following representation:

> This poor babies hair loss is PERMANENT! [crying emoji]. The damage to the scalp and hair follicles is too extensive to support new growth! The mother IS suing Monat.. She has proof from the Dr. that Monat caused it.

See Baker Facebook Post, Dated February 16, 2018, attached as **Exhibit F**.

39. Individually and collectively, Baker's Facebook posts explicitly or impliedly misrepresent that Monat's products cause miscarriages, infertility, hormonal imbalance, scalp sores, hair loss, and balding.

40. The comments on Baker's Facebook posts indicate that people actually believe Baker's false statements about Monat. For instance, one individual commented, "[t]he more I read about the Monat product the more I believe it's just a large scale sad attempt at sterilizing the human race by the wealthy. Just my

humble opinion on the information presented by multiple sources. Go Kayla, F--k 'em up." *Id.* (expletive edited). Baker responded, "[t]he rabbithole [sic] that is this company goes deeper and deeper lol. Thanks hun." *Id.*

41. Baker's Facebook posts and comments have been adopted and republished by a number of individuals, many of whom, on information and belief, have a financial interest in disparaging Monat's products.

42. On information and belief, Baker has made other defamatory statements, and her actions indicate she is likely to continue to make additional statements of a similar nature in the future.

43. There is no scientific or factual basis for Baker's claims.

44. Monat's products have passed all clinical safety tests to which they have been subjected.

45. The ingredients in all of Monat's products have been verified as safe for consumer use by the United States Food and Drug Administration and the European Commission in the European Union, in the quantities that Monat uses them.

46. Monat takes seriously the consumer complaints it receives, and investigates each complaint to the fullest extent permitted by the consumer.

47. Despite selling hundreds of millions of dollars in hair care and personal products, to hundreds of thousands of customers, Monat has seen no bona

fide evidence that Monat's products cause hormonal imbalance, scalp sores, hair loss, and balding.

48. In particular, Baker's comments that Monat products cause miscarriages, infertility, and other reproductive issues are egregiously false. Moreover, Baker's assertion that red clover is the source of these problems is also false.

49. Red clover is a plant, and an ingredient that is commonly used in medicines, topical lotions, foods, and beverages, and is widely deemed safe for human ingestion. Such information is publicly available.

50. Although Baker is one individual, she has used her social media account as a platform to falsely and maliciously disparage Monat, its executives, and its products, and to attempt to gravely injure the business.

51. Baker has published her posts, comments, and statements directly to, on information and belief, hundreds of people.

52. Thousands more have likely viewed Baker's posts by virtue of Facebook's "share" feature, which allows any user to publish to their entire Facebook network another user's post.

53. Baker's posts have been "shared" on numerous occasions.

54. In addition, Baker's Facebook page is publicly accessible, so her posts can be accessed by individuals who are merely surfing Facebook or Google.

55. Baker's Facebook posts are particularly damaging to Monat because Facebook is the primary avenue through which Monat Market Partners promote Monat's products.

56. Through the efforts of its Market Partners, Monat generated over $200 million in sales in 2017.

57. Baker's false and malicious statements have caused, and continue to cause, Monat to lose product sales. Her statements have improperly, and without justification, dissuaded potential customers from using Monat's products, and have caused existing customers to stop using Monat's products.

58. For example, at least one pregnant woman has told a Market Partner that although she believes the statements regarding miscarriages, infertility, and hormonal imbalances are false, she will not continue to use or purchase Monat products because it is not worth taking the risk that the statements are true.

59. Baker's false and malicious statements have damaged, and continue to damage, Monat's ability to attract new Market Partners.

60. Baker's false and malicious statements have damaged, and continue to damage, Monat's relationships with its current Market Partners and their ability to market and sell Monat's products.

61. Baker's statements have also damaged Monat because they have prevented consumers from purchasing Monat's products, and have deterred Market Partners from working, or continuing to work, with Monat.

## COUNT I:
## INJURIOUS FALSEHOOD/COMMERCIAL DISPARAGEMENT

62. Monat incorporates paragraphs 1 through 61 as this paragraph 62.

63. On her public Facebook page, Baker published falsehoods about the quality, condition, and value of Monat's products.

64. Baker's Facebook Posts were published to hundreds or, on information and belief, even thousands of individuals.

65. Baker made her statements with knowledge of their falsity, or while being reckless with regard to their falsity, and without any privilege to do so.

66. Baker intentionally made false statements to cause damage to Monat's business and product sales.

67. Baker's statements damaged Monat's sales, the value of its products, and Monat's relationships with its Market Partners, in excess of $75,000.

68. Baker made her statements with willful and malicious intent, as demonstrated by the content of her posts, and the fact that she refused to remove them, and she continued to make additional false statements, even after being presented with Monat's Demand Letter.

WHEREFORE, Monat Global Corp requests the following relief against Defendant Kayla Baker:

a) permanent injunctive relief requiring Baker to remove from her Facebook and the Internet all of her false statements concerning Monat's products;

b) permanent injunctive relief preventing Baker from publishing further false statements concerning Monat's products;

c) an order requiring Baker to release public statements to ameliorate the negative effect of her false statements;

d) compensatory damages based on injury Baker caused to Monat's sales, the value of its products, and business interests;

e) exemplary damages in excess of $225,000 for Baker's maliciously false statements; and

f) any other just relief.

## COUNT II:
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
## M.C.L. 445.903

69. Monat incorporates paragraphs 1 through 61 as this paragraph 69.

70. Baker has publicly and falsely represented that Monat's products are of an inferior standard, quality, and grade, in violation of M.C.L. 445.903(1)(e).

71. Baker has disparaged Monat's goods, services, business, and reputation by false and misleading misrepresentations of fact, in violation of M.C.L. 445.903(1)(f).

72. Baker promotes the sale of salon-brand products in commercial competition with Monat.

73. On information and belief, Baker receives commissions or other job incentives for selling such products.

74. Both Baker and Monat are engaged in the conduct of trade or commerce.

75. The products offered by Baker and Monat are primarily for personal, household, and family use.

76. Baker's Facebook posts have the tendency to deceive or mislead consumers, and have in fact deceived and misled consumers by telling them that Monat's products are detrimental to their health and well-being, when no such danger exists.

77. Baker's statements have caused injury to Monat, as they have prevented consumers from purchasing Monat's products, and have deterred Market Partners from working with Monat.

78. Baker's deceptive and unfair business practices have damaged Monat's sales, its business relationships with Market Partners, and its ability to recruit prospective Market Partners, in excess of $75,000.

79. Baker's statements and conduct demonstrate a clear intent to deceive consumers and gravely injure Monat's business and reputation, as demonstrated by her willingness to fabricate claims and allegations to advance her aims.

WHEREFORE, Monat Global Corp requests the following relief against Defendant Kayla Baker:

a) permanent injunctive relief requiring Baker to remove from her Facebook and the internet all false statements concerning Monat and its products;

b) permanent injunctive relief preventing Baker from publishing further unfair and deceptive statements concerning Monat and its products (M.C.L. 445.911(1)(b));

c) an order requiring Baker to release public statements to ameliorate the consumer confusion resulting from Baker's false statements;

d) actual damages resulting from Baker's unfair and deceptive practices;

e) reasonable attorneys' fees incurred to bring and prosecute this action, pursuant to statute (M.C.L. 445.911(1)(2)); and

f) any other just relief.

## COUNT III:
## DEFAMATION/LIBEL

80. Monat incorporates paragraphs 1 through 61 as this paragraph 80.

81. On her public Facebook page, Baker published falsehoods about Monat, its products, and its executives, on information and belief, to hundreds or even thousands of individuals.

82. Baker's statements were intended to, and did, impugn Monat's reputation, it's good name, and its ability to conduct its business.

83. Baker's statements are not capable of multiple interpretations. Each was directed at Monat, its products, and its executives, and were intended to cause damage to each.

84. There is no applicable privilege covering Baker's statements.

85. Baker knew her statements were false, or she was reckless with regard to the truth or falsity of her statements.

86. In context, a reasonable person viewing Baker's statements as a whole, or individually, would understand that she represented that Monat's products cause miscarriages, infertility, hormonal imbalance, scalp sores, hair loss, and balding.

87. Baker's statements have caused mental anguish and unnecessary stress for Monat employees who have had to deal with the business repercussions of Baker's false statements.

88. As a result of Baker's statements, Monat has suffered damage to its sales, its corporate reputation, and its relationships with its current and prospective customers and Market Partners, in excess of $75,000.

89. Despite receiving Monat's written Demand Letter, and being given a reasonable time to retract her statements, Baker refused, and instead, continued to make additional defamatory posts.

90. Baker made her statements with willful and malicious intent, as demonstrated by the content of her posts, and her actions after receiving Monat's Demand Letter.

WHEREFORE, Monat Global Corp requests the following relief against Defendant Kayla Baker:

    a) permanent injunctive relief requiring Baker to remove from her Facebook and the Internet all her false statements concerning Monat and its products;

    b) permanent injunctive relief preventing Baker from publishing further false statements concerning Monat and its products;

    c) an order requiring Baker to release public statements to ameliorate the negative effects of her false statements;

    d) compensatory damages based on Monat's mental anguish and injury caused to Monat's sales, reputation, and business interests;

  e) exemplary damages in excess of $225,000 for Baker's maliciously false statements, and for her failure to make retractions after being given notice and a reasonable time to comply (M.C.L. § 600.2911(2)(b)); and

  f) any other just relief.

## COUNT IV:
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP OR EXPECTANCY

91. Monat incorporates paragraphs 1 through 61 as this paragraph 91.

92. Monat has had a network of Market Partners since October 2014.

93. Monat's existing Market Partners are continually attempting to recruit new Market Partners to sell Monat's products.

94. Baker is aware of Monat's current and prospective relationships with existing and potential Market Partners because, on multiple occasions, she referenced Monat Market Partners in her Facebook posts.

95. Baker actively spreads falsehoods about Monat and its products to directly impugn existing Market Partners, and to discourage prospective Market Partners, and customers, from associating with Monat and purchasing its products.

96. Baker took these actions without any justification, and did so based on a profit motive, and to fuel her anger and resentment towards Monat.

97. Baker intentionally made false statements about Monat and its products to unjustifiably interfere with Monat's existing and prospective

relationships with its Market Partners and customers, and to induce those persons to not do business with Monat.

98. Baker's intentional and unjustified interference and false statements have caused existing and prospective Market Partners to choose to not do business with Monat.

99. Baker's intentional and unjustified interference has caused customers to decide to forego purchasing products from Monat. Such economic transactions would have occurred but for Baker's interference.

100. Baker made her statements with willful and malicious intent, as demonstrated by the content of her posts, and the fact that she refused to remove them, and she continued to make additional false statements even after being presented with Monat's Demand Letter.

WHEREFORE, Monat Global Corp requests the following relief against Defendant Kayla Baker:

    a) permanent injunctive relief against Baker preventing her from unjustifiably interfering with Monat's prospective business relationships;

    b) an order requiring Baker to release public statements to ameliorate the negative effect of her unjustified interference;

    c) compensatory damages based on injury to Monat's foregone opportunities with current and prospective Market Partners and customers;

    d)    exemplary damages in excess of $225,000 for Baker's intentional and malicious interference; and

    e)    any other just relief.

Dated: February 19, 2018        ABBOTT NICHOLSON, P.C.

                By:    /s/Christopher R. Gura
                      William D. Gilbride, Jr. (P36830)
                      Christopher R. Gura (P58437)
                      300 River Place, Suite 3000
                      Detroit, MI 48207
                      (313) 566-2500
                      wdgilbridge@abbottnicholson.com
                      crgura@abbottnicholson.com

                      *Attorneys for the Plaintiff*

                      OF COUNSEL:

                      William C. Meyers
                      Joseph L. Hoolihan
                      GOLDBERG KOHN LTD.
                      55 East Monroe Street
                      Suite 3300
                      Chicago, Illinois  60603
                      (312) 201-4000

4832-3795-7470, v.  1